[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2005
THOMAS K. KAHN
CLERK

No. 04-10279

_____

D. C. Docket No. 02-80934-CV-DTKH

JOHN DOE, I,
JOHN DOE, II,
JOHN DOE, III,
JOHN DOE, IV, et al.,

Plaintiffs-Appellants,

versus

JAMES T. MOORE,
in his official capacity as
Commissioner of the Florida Department
of Law Enforcement,
SECRETARY FOR THE DEPARTMENT OF CORRECTIONS,
by serving James Crosby in his official
capacity as Secretary of the Florida
Department of Corrections,
FRED O. DICKINSON, III.,
in his official capacity as Executive
Director of the Florida Department of
Highway Safety and Motor Vehicles,
EDWARD BIELUCH, Sheriff,
in his official capacity as Sheriff
of Palm Beach County and as class defendant
for all other similar local law enforcement
officers in the State of Florida,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 6, 2005)

Before BIRCH, KRAVITCH and CUDAHY[*], Circuit Judges.

BIRCH, Circuit Judge:

In this putative class action, initiated by ten John Does and one Jane Doe (collectively "Appellants") on behalf of themselves and others similarly situated, we determine whether Florida's sex offender registration/notification scheme ("Sex Offender Act") and DNA collection statute ("DNA Statute"), codified in relevant parts at FLA. STAT. §§ 943.043, .0435, .325, 944.606, violate the Appellants' constitutional right to due process, equal protection, travel, separation of powers, and freedom from ex post facto legislation. The district court granted the state's motion to dismiss because the Sex Offender Act and the DNA Statute did not offend any provision of the Constitution. We **AFFIRM**.

**I. BACKGROUND**

---

[*]Honorable Richard D. Cudahy, Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

In response to the 1994 abduction, rape, and murder of a seven-year-old girl, Megan Kanka, by her neighbor, a convicted sex offender, Congress along with all 50 states enacted laws requiring sex offenders to register their residence with local law enforcement. See Smith v. Doe, 538 U.S. 84, 89-90, 123 S. Ct. 1140, 1145 (2003). Concerned by Megan's murder and the high number of repeat sex offenders, states enacted these laws for the purpose of notifying the public about local sex offenders and to aid law enforcement in identifying and locating potential suspects in local sex-related crimes. See Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, 4, 123 S. Ct. 1160, 1163 (2003).

The Sex Offender Act requires any sex offender to register with the local sheriff's office within 48 hours of their release from custody or relocation to a permanent or temporary residence in Florida. FLA. STAT. § 943.0435(2). The Sex Offender Act defines a sex offender as a person who "has been [c]onvicted of committing, or attempting, soliciting, or conspiring to commit, any of the [following] criminal offenses . . . in this state or similar offenses in another jurisdiction:" kidnapping of a child; false imprisonment of a child under the age of 13; luring or enticing a child under 12 into a structure, dwelling or conveyance for an unlawful purpose; sexual battery; procuring child prostitution; lewd and lascivious offenses committed upon or in the presence of a person under 16; lewd

3

and lascivious battery, molestation, or conduct; lewd and lascivious offenses committed in the presence of an elderly person, battery, and molestation; promoting a sexual performance by a child; showing obscene material to a minor; possessing child computer pornography; transmitting child pornography; buying or selling a minor with knowledge the minor will be portrayed as engaging or appearing to engage in sex acts. § 943.0435(1)(a)(1).[1]  Further, anyone moving to Florida who has been convicted of similar crimes or has been designated as a sex offender in another state will also be considered a sex offender in Florida. § 943.0435(1)(a)(2)-(3).

Upon registering with the local sheriff's office, a sex offender must provide the following:

> name, date of birth, social security number, race, sex, height, weight, hair and eye color, tattoos or other identifying marks, occupation and place of employment, address of permanent or legal residence or address of any current temporary residence, . . . date and place of each conviction, and a brief description of the crime or crimes committed by the offender.

§ 943.0435(2).  Within 48 hours of his or her contact with the sheriff's office, the sex offender must "report in person at a driver's license office of the Department of

---

[1]When a person is convicted of kidnapping, false imprisonment, or luring or enticing a child into a dwelling or conveyance, there must be a sexual component shown in addition to the predicate offense before designating that person as a sex offender.  See Raines v. State, 805 So. 2d 999, 1003 (Fla. Dist. Ct. App. 2001).  Moreover, when the crime is kidnapping, false imprisonment, or luring or enticing a child into a dwelling or conveyance, the person is not a sex offender if they are the parent of the child. § 943.0435(1)(a)(1).

4

Highway Safety and Motor Vehicles" where he or she must identify themselves as a sex offender, obtain a driver's license or identification card, and submit to a photograph and fingerprinting. § 943.0435(3). The Department of Highway Safety and Motor Vehicles ("DHSMV") will then send the photograph and any further information to the Department of Law Enforcement ("DLE") for public notification by publication to, among other things, the internet. § 943.0435(4).

If a sex offender changes residence, he or she must report to the DHSMV within 48 hours to obtain an updated driver's license or identification card. Id. When a sex offender moves out of Florida, he or she is required to notify the local sheriff's office 48 hours before leaving and give the address of his or her intended residence out of state. § 943.0435(7).

A sex offender must comply with the registration statutes for life. The sex offender, however, may be relieved of his or her registration obligation if he or she is pardoned or petitions a court 20 years after release from custody or supervision and, among other things, the court finds them to not be "a current or potential threat to public safety." § 943.0435(11).

The DNA Statute requires any person who is convicted of certain crimes and is incarcerated or on supervisory release to submit two blood or tissue samples for DNA testing. § 943.325(1)(a). Results of the testing identifying the person are

5

kept on file with the DLE and used by law enforcement for identification in subsequent crimes. The crimes that currently require DNA collection are sexual battery, lewdness and indecent exposure, murder, aggravated battery, burglary, carjacking, home invasion robbery, robbery, robbery by sudden snatching, aggravated child abuse, aggravated abuse of an elderly or disabled person, and any felony involving the use of a firearm. § 943.325(1)(b).[2]

Here, Appellants allege in their complaint that they are all Florida residents required by Florida law to register as sex offenders and all have their photographs and identifying information posted on Florida's sex offender website. Further, the complaint alleges that five of the Appellants have "been found by their respective trial courts not to be likely to reoffend." Eight were required to submit blood or tissue samples for DNA analysis. Appellants filed their case in the district court seeking relief from the registration requirements. They claimed that the state violated substantive due process by infringing their liberty interest in good reputation, their right to travel, privacy, employment, and freedom of religious association. Further, they claimed the acts are unconstitutional on equal protection grounds because they have greater post-release reporting burdens than other convicted felons. The Appellants also argued that the acts violated the separation

---

[2]Those convicted of any felony offense will be required to submit to DNA testing beginning in July 2005. § 943.325(1)(b)(4).

6

of powers doctrine because they nullify judicial sentencing. Finally, they argued that the acts were an unconstitutional impairment of contract because they altered plea bargains made by sex offenders who were sentenced prior to their enactment.

On 15 December 2003, the district court dismissed all of Appellants' claims. The court held that no fundamental rights protected by the United States Constitution had been affected by the Sex Offender Act, therefore the court would only apply a rational basis test to the substantive due process claims. The court concluded that the Sex Offender Act was rationally related to a legitimate government end. Similarly, the court applied the rational basis test to the equal protection claims of impermissible treatment of those in the sex offender classification. The court again concluded that the Sex Offender Act's separate classification did not violate the Constitution. Further, the court dismissed Appellants' claims for separation of powers and impairment of contract, finding no violation of the constitutional provisions. Finally, the court found no constitutional error in Florida's DNA Statute and upheld its validity with little discussion.

## II. DISCUSSION

The Appellants appeal arguing that the district court erred when it dismissed their complaint. We review this motion to dismiss order de novo and view all factual allegations in the complaint as true and in a light most favorable to the

7

Appellants. See Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004). In order to succeed on a 42 U.S.C. § 1983 claim, the Appellants must show, among other things, that there was a violation of a right secured by the Constitution or federal law. See Skinner v. City of Miami, 62 F.3d 344, 347-48 (11th Cir. 1995). Here, they argue that the complaint states a sufficient § 1983 claim that the Sex Offender Act violates their constitutional rights to due process, equal protection, travel and separation of powers, and that the DNA Statute violates their constitutional rights to separation of powers, due process and to be free of ex post facto legislation. We do not agree.

## A. Sex Offender Act

### 1. Due Process Claims

The United States Constitution guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. This provision has been interpreted to have both a procedural and substantive component when reviewing state action. The more common procedural component guarantees that a state will not deprive a person of life, liberty, or property without some form of notice and opportunity to be heard. See Hamdi v. Rumsfeld, ___ U.S. ___, 124 S. Ct. 2633, 2648-49 (2004). Here, the Appellants do not directly claim a procedural due process violation and we will not

8

consider one since that path has been foreclosed by the Supreme Court's decision in Connecticut Department of Public Safety, where the Court upheld a similar Connecticut sex offender registration statute against claims of procedural due process violations.[3]  538 U.S. at 7-8, 123 S. Ct. at 1164-65.

Instead, the Appellants argue that the Sex Offender Act violates substantive due process.  This substantive component protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  See Palko v. Connecticut, 302 U.S. 319, 325, 326, 58 S. Ct. 149, 152 (1937); McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc).  Fundamental rights protected by substantive due process are protected from certain state actions regardless of the procedures the state uses.  See Washington v. Glucksberg, 521 U.S. 702, 721, 117 S. Ct. 2258, 2268 (1997); McKinney, 20 F.3d at 1556.  When a state enacts legislation that infringes

_____

[3]Appellants argue that the Sex Offender Act violates substantive due process by creating an irrebuttable presumption of dangerousness.  Though they strain to place their argument in terms of substantive due process we find their argument closely resembles the procedural due process argument proposed in Connecticut Department of Public Safety, 538 U.S. 1, 6, 123 S. Ct. 1160, 1163.  There, the sex offenders argued that they have a procedural due process right to demonstrate they are not "currently dangerous" because the sex offender registration requirement implied that they were dangerous.  Id.  Although the Second Circuit Court of Appeals agreed with that argument and held there was a due process violation, the Supreme Court reversed, holding that no liberty interest was implicated because the Connecticut statute turned "on an offender's conviction alone" and dangerousness "is of no consequence under" the law.  Id. at 6-7.  Similarly, the Sex Offender Act here does not turn on the dangerousness of the offender, merely the fact that he or she was convicted.

9

fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302, 113 S. Ct. 1439, 1447 (1993). The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra of constitutional rights. See Glucksberg, 521 U.S. at 720, 117 S. Ct. at 2267; Paul v. Davis, 424 U.S. 693, 712-13, 96 S.Ct. 1155, 1166 (1976). These special "liberty" interests include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." Glucksberg, 521 U.S. at 720, 117 S. Ct. at 2267 (citations omitted). The Court, however, is very reluctant to expand substantive due process by recognizing new fundamental rights, explaining:

> we "have always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore 'exercise the utmost care whenever we are asked to break new ground in this field,' lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court.

Glucksberg, 521 U.S. at 720, 117 S. Ct. at 2267-68 (citations omitted).

10

We must analyze a substantive due process claim by first crafting a "careful description of the asserted right." Flores, 507 U.S. at 302, 113 S. Ct. at 1447; accord Glucksberg, 521 U.S. at 720-21, 117 S. Ct. at 2268. Second, we must determine whether the asserted right is "one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Williams v. Attorney Gen. of Alabama, 378 F.3d 1232, 1239 (11th Cir. 2004) (quoting Glucksberg, 521 U.S. at 720-21, 117 S. Ct. at 2268), cert. denied, Williams v. King, ___ U.S. ___, 125 S. Ct. 1335 (2005).

a. Careful Description

The Appellants appear to make broad claims that the Sex Offender Act infringes their liberty and privacy interests, particularly Appellants assert that the Sex Offender Act infringes their "rights to family association, to be free of threats to their persons and members of their immediate families, to be free of interference with their religious practices, to find and/or keep any housing, and to a fundamental right to find and/or keep any employment." Appellants' Br. at 6 (citations omitted). Despite Appellants' broad framing of their rights in this case, however, we must endeavor to create a more careful description of the asserted right in order to analyze its importance.

11

Although the Supreme Court has recognized fundamental rights in regard to some special liberty and privacy interests, it has not created a broad category where any alleged infringement on privacy and liberty will be subject to substantive due process protection. See Paul, 424 U.S. at 713, 96 S. Ct. at 1166 (noting that personal privacy rights protected by substantive due process "must be limited to those which are 'fundamental' or 'implicit in the concept of ordered liberty'"). Further, in order to trigger substantive due process protection the Sex Offender Act must either directly or unduly burden the fundamental rights claimed by Appellants. See Maher v. Roe, 432 U.S. 464, 473-74, 97 S. Ct. 2376, 2382 (1977) (holding that the substantive due process clause "protects the woman from unduly burdensome interference with her freedom to decide whether to terminate her pregnancy"); see also Paul P. v. Verniero, 170 F.3d 396, 405 (3rd Cir. 1999) (holding that the indirect effects caused by a sex offender registration statute are "too substantially different from the government actions" in prior case law "to fall within the penumbra of constitutional privacy protection."). Thus, a careful description of the fundamental interest at issue here allows us to narrowly frame the specific facts before us so that we do not stray into broader "constitutional vistas than are called for by the facts of the case at hand." Williams, 378 F.3d at

12

1240.[4]  To do so we use the Sex Offender Act itself to define the scope of the claimed fundamental right.  Id. at 1241.  After reviewing the provisions of the Sex Offender Act and the briefs, the right at issue here is the right of a person, convicted of "sexual offenses," to refuse subsequent registration of his or her personal information with Florida law enforcement and prevent publication of this information on Florida's Sexual Offender/Predator website.

### b. History and Tradition

With this description, we now ask whether this right is "'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'"  Id. at 1239.  We conclude that it is not.

The circuit courts that have considered this substantive due process argument regarding sex offender registries have upheld such registration and publication requirements finding no constitutional infirmities.  See, e.g., Doe v. Tandeske, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam) ("Persons who have been convicted of serious sex offenses do not have a fundamental right to be free from . . . registration and notification requirements. . . .");  Gunderson v. Hvass, 339

_____

[4]We do not suggest that cases involving other privacy interests or burdens on those interests are irrelevant to our decision in this case.  Rather, we conclude that first we must quantify the claimed right in narrow terms before analyzing its historical importance in the second prong where discussion of prior case law is more appropriate.

F.3d 639, 643 (8th Cir. 2003) (sex offender registration statute did not infringe the fundamental right to a presumption of innocence); Paul P., 170 F.3d at 404, 405 (holding that sex offender registration did not infringe fundamental right of family relationships, and although the registration of offenders home address invaded the fundamental right to privacy, the state had a compelling interest to prevent future sex offenses).[5] In Paul P., the court held that the indirect effects of members of the public on the offender's relationship with his family did not rise to the infringement of a fundamental right by the state. 170 F.3d at 405. As the court conceded, even if the effect of registration places a constitutionally recognizable claim on the offender's family relationships, it did not fall under a fundamental right classification because the sex offender statute did "not restrict plaintiffs' freedom of action with respect to their families and therefore does not intrude upon the aspect of the right to privacy that protects an individual's independence in making certain types of important decisions." Id.

Furthermore, in Paul v. Davis the Supreme Court determined that there was no fundamental right to prevent the public disclosure of a person's arrest for shoplifting. 424 U.S. at 713, 96 S. Ct. at 1166. In Paul, local police departments

---

[5]The Eighth Circuit has further held constitutional an Iowa statute banning sex offenders from living within 2000 feet of a school or child care facility, which was argued on similar substantive due process and right to travel grounds. See generally Doe v. Miller, ___ F.3d ___ (April 29, 2005).

14

distributed fliers to area stores alerting them to possible shoplifters during the holiday shopping season. Id. at 694-95, 96 S. Ct. at 1157. The fliers contained the mug shot and name of the plaintiff in the case who had been arrested for and charged with shoplifting. Id. at 695, 96 S. Ct. at 1158. At the time of the flyer distribution, however, he had not been convicted of the crime, and shortly thereafter the charge was dismissed. Id. at 696, 96 S. Ct. at 1158. The Supreme Court refused to extend substantive due process protection to the publication of official acts like arrest records, noting that the right claimed was "far afield" of its previous decisions that limited a state's power to regulate private conduct. Id. at 713, 96 S. Ct. at 1166.[6]

Though the Supreme Court has not addressed whether substantive due process invalidates sex offender registration statutes, see Connecticut Dep't of Public Safety, 538 U.S. at 8, 123 S. Ct. at 1165, we can find no history or tradition that would elevate the issue here to a fundamental right. In fact, the case law we have found supports the contrary conclusion. We can certainly understand how a person may be shunned by a person or group that discovers his past offense. However, a state's publication of truthful information that is already available to

_____

[6]The Court noted previous decisions recognized limitations on state regulatory power in areas regarding "marriage, procreation, contraception, family relationships, and child rearing and education." Id.

15

the public does not infringe the fundamental constitutional rights of liberty and privacy. Therefore, we do not review the statute with strict scrutiny, but only under a rational basis standard.

### c. Rational Basis

When a statute does not implicate fundamental rights, we must ask whether it is "rationally related to legitimate government interests." Glucksberg, 521 U.S. at 728, 117 S. Ct. at 2271. The rational basis standard is "highly deferential" and we hold legislative acts unconstitutional under a rational basis standard in only the most exceptional circumstances. Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001).

Here, the state articulates its reasoning for the Sex Offender Act as "protect[ing] the public from sexual abuse." Appellee's Br. at 32. The state argues that the public can use the registration "to determine whether any sex offenders live in their neighborhood, make an individual assessment of the risk, and take any precautions appropriate under the circumstances." Id. at 33. We agree with the state that the Sex Offender Act meets the rational basis standard. It has long been in the interest of government to protect its citizens from criminal activity and we find no exceptional circumstances in this case to invalidate the law. We join with other courts, see, e.g., Gunderson, 339 F.3d at 643-44, in holding that the Sex

16

Offender Act is rationally related to a legitimate government interest. Thus, Appellants' substantive due process argument fails.

## 2. Equal Protection Claim

Group classification by legislative act will be analyzed under a strict scrutiny if the classification infringes fundamental rights or concerns a suspect class. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440, 105 S. Ct. 3249, 3254 (1985). Because we have found no fundamental rights are at stake or unduly burdened in the preceding section, we must now determine whether the Sex Offender Act involves a suspect class. If not, we review the constitutionality of the classification under a rational basis test. Id. at 442, 105 S. Ct. at 3255.

We recognize that the Supreme Court has designated several classifications as suspect and subject to heightened scrutiny under the Equal Protection Clause. They include classifications regarding "race, alienage, national origin, gender, or illegitimacy." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995). Here, Appellants argue that the Sex Offender Act impermissibly treats sex offenders differently from other felony offenders and that it arbitrarily assigns different registration requirements to sub-classes of sex offenders based on parental relationship to victim, status of offender as a minor, insanity or civil commitment of the offender, and release of offender from supervision prior to enactment of the

17

statute. Since sex offenders are not considered a suspect class in general, <u>see</u>

<u>United States v. LeMay</u>, 260 F.3d 1018, 1030 (9th Cir. 2001), and the various sub-

classifications presented by the Appellants do not implicate a suspect class, we

review those classifications under a rational basis test asking whether they are

"rationally related to a legitimate governmental purpose." <u>City of Cleburne</u>, 473

U.S. at 446, 105 S. Ct. at 3258.

A statute is considered constitutional under the rational basis test when

"there is any reasonably conceivable state of facts that could provide a rational

basis for" it. <u>FCC v. Beach Communications</u>, 508 U.S. 307, 313, 113 S. Ct. 2096,

2102 (1993). The Supreme Court in <u>Beach Communications</u> noted that:

> Where there are plausible reasons for Congress' action, our inquiry is at an
> end. This standard of review is a paradigm of judicial restraint. The
> Constitution presumes that, absent some reason to infer antipathy, even
> improvident decisions will eventually be rectified by the democratic process
> and that judicial intervention is generally unwarranted no matter how
> unwisely we may think a political branch has acted.
>
> On rational-basis review, a classification in a statute . . . comes to us
> bearing a strong presumption of validity, and those attacking the rationality
> of the legislative classification have the burden to negative every
> conceivable basis which might support it. Moreover, because we never
> require a legislature to articulate its reasons for enacting a statute, it is
> entirely irrelevant for constitutional purposes whether the conceived reason
> for the challenged distinction actually motivated the legislature. Thus, the
> absence of legislative facts explaining the distinction on the record, has no
> significance in rational-basis analysis. In other words, a legislative choice is
> not subject to courtroom factfinding and may be based on rational
> speculation unsupported by evidence or empirical data.

18

Id. at 313-15, 113 S. Ct. at 2101-02 (citations and punctuation omitted). "Almost every statute subject to the very deferential rational basis . . . standard is found to be constitutional." Williams, 240 F.3d at 948.

Based on this standard, we find no constitutional infirmity here. First, Appellants argue that the Sex Offender Act impermissibly treats sex offenders different from other felons in the length of time they are required to register and the penalties associated with failure to register. Appellants' Br. at 33-34. The Sex Offender Act requires a lifetime registration requirement for sex offenders, who may petition a court to avoid registration only after 20 years. Id. Conversely, other felons are subjected to only a five-year registration period with automatic removal of that requirement after the five years. Id.; Appellee's Br. at 45. The state argues that the purpose of the distinction "is based on an assessment of the likelihood of sex offenders re-offending over time at a high rate." Appellee's Br. at 45. The increased reporting requirements based on evidence of increased recidivism among a class of felons is rationally related to the state's interest in protecting its citizens from criminal activity. See Smith, 538 U.S. at 102, 123 S. Ct. at 1152 (noting that the broad categories of a sex offender registration statute "and the corresponding length of the reporting requirement, are reasonably related to the danger of recidivism").

Second, Appellants argue that the Sex Offender Act impermissibly distinguishes crimes committed by the parents of victims–such as kidnaping, false imprisonment, or luring or enticing a child into a dwelling or conveyance–from the same crimes committed by non-parents of the victim. The state argues that the distinction is based on the fact that these crimes committed by parents are typically a result of domestic disputes and exemption of the parents recognizes that fact. We can find no reason why such a designation is not rationally related to the state's interest in protecting the public from sexual abuses, especially when such offenses do not themselves have a sexual component and parents may still have to register as sex offenders if they are convicted of further crimes, such as sexual battery.[7]

Third, Appellants argue that those found not guilty of sex offenses by reason of insanity or those civilly committed that are prone to sexual deviance are not required to register as sex offenders. The state reasons that the insanity classification is rationally related to the legitimate purpose of criminal deterrence. Because a criminally insane or civilly committed offender would not appreciate the deterrent factor, there is no need to require them to register. Further, the state argues that those acquitted by insanity or civilly committed are by definition not

_____

[7]It is also important to note here that Florida case law at least limits application of the Sex Offender Act when a person convicted of these crimes was not also convicted of some sexual component. Raines, 805 So. 2d at 1003.

20

convicted of a sex offense under the statute. Considering these stated objectives and the reasoning of other courts that note a state can distinguish between those civilly committed and convicted sex offenders, see Thielman v. Leean, 282 F.3d 478, 485 (7th Cir. 2002), the insanity classification meets the rational basis test.

Fourth, Appellants argue the Sex Offender Act impermissibly distinguishes between a person 18 years old and younger from those 19 and older by requiring only a ten-year registration period for the younger offenders. See § 943.0435(11)(b). The state argues this distinction is based on a finding that minors are "less able to control their behavior than adults, but that they can be expected to gain more self-control and to act responsibly as they mature." Appellee's Br. at 46. Such a distinction is supported by the countless criminal laws that distinguish the acts of minors from the acts of adults. The state's objective to focus on a class of offenders that are particularly dangerous or likely more dangerous is rational, and extensive "courtroom factfinding" that questions legislative determinations is not permissible here. Beach Communications, 508 U.S. at 315, 113 S. Ct. at 2102.

Fifth, Appellants argue that the state improperly exempted sex offenders from registration who had been released from supervision prior to the enactment of the statute. The state argues that this classification hinged on the expense and futility of attempting to locate and register past sex offenders. Because this class

21

of past offenders have been released from supervision, it would be difficult to locate them and further drain resources dedicated to protecting the public from sex offenders in general. State budget concerns and resource allocation are legitimate government interests, see Rodriguez v. Cook, 169 F.3d 1176, 1181 (9th Cir. 1999) ("Budgetary concerns are a legitimate governmental interest . . . ."), and reducing extraneous costs that can provide only moderate success in registering past sex offenders is rationally related to that interest. While Appellants may argue that this distinction is unfair, that is not for us to determine once we hold that there is a rational basis for that distinction.

Thus, Florida's various classifications and sub-classifications for sex offender registration are rationally related to a legitimate governmental purpose and, therefore, constitutional under the Equal Protection Clause. We will not substitute our judgment on when and where to make such distinctions for that of the Florida legislature. See Beach Communications, 508 U.S. at 316, 113 S. Ct. at 2102 ("Such scope-of-coverage provisions are unavoidable components of most economic or social legislation.").

### 3. Right to Travel

Next, Appellants argue that the Sex Offender Act infringes their fundamental right to travel under the United States Constitution. However, mere

22

burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel. See Saenz v. Roe, 526 U.S. 489, 499, 119 S. Ct. 1518, 1524 (1999) (noting a statute cannot "'unreasonably burden'" the right to travel). In the predominant case law, the right to travel protects a person's right to enter and leave another state, the right to be treated fairly when temporarily present in another state, and the right to be treated the same as other citizens of that state when moving there permanently. Id. at 500, 119 S. Ct. at 1525.

Here, however, the Appellants do not argue that they were treated differently because they were a new or temporary resident to Florida or that they were not allowed to enter and leave another state. Rather, they argue that it is inconvenient to travel from their permanent residence because the Sex Offender Act requires them to notify Florida law enforcement in person when they change permanent or temporary residences.[8] Though we recognize this requirement is burdensome, we do not hold it is unreasonable by constitutional standards, especially in light of the reasoning behind such registration. The state has a strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that could reoffend. Without such a requirement, sex

---

[8]Temporary residence includes "a place where the person routinely abides, lodges or resides for a period of 4 or more consecutive or nonconsecutive days in any month and which is not the person's permanent residence, including any out-of-state address." FLA. STAT. § 775.21(2)(g).

offenders could legally subvert the purpose of the statute by temporarily traveling to other jurisdictions for long periods of time and committing sex offenses without having to notify law enforcement. The state has drawn a line for temporary and permanent relocation, and we hold this requirement does not unreasonably burden the Appellants' right to travel.

### 4. Separation of Powers

Appellants also claim that the Sex Offender Act violates Florida's separation of powers doctrine. They claim that the Sex Offender Act effectively nullifies prior judicial findings that certain Appellants are not apt to re-offend or engage in criminal conduct. Furthermore, they claim the Sex Offender Act undermines judicial sentencing duties. Appellants' claim, however, runs afoul of another important constitutional doctrine–the Eleventh Amendment.

The Eleventh Amendment prevents suits in federal court against an unconsenting state by its citizens or citizens of other states. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984). This immunity includes "a federal suit against state officials on the basis of state law . . . when . . . the relief sought and ordered has an impact directly on the State itself." Id. at 117, 104 S. Ct. at 917. Appellants' argue that the state's immunity has been waived because it was not raised as a defense in the district court. A state's waiver

24

of its sovereign immunity, however, must be "unequivocally expressed," see id. at 99, 104 S. Ct. at 907, and Eleventh Amendment jurisdictional questions can be raised for the first time on appeal, see Patsy v. Bd. of Regents, 457 U.S. 496, 515 n.19, 102 S. Ct. 2557, 2568 (1982). The Eleventh Amendment acts as a jurisdictional bar for any such suit against the state, even under supplemental jurisdiction. See Pennhurst, 465 U.S. at 121, 104 S. Ct. at 919. Accordingly, we cannot decide an issue of state law that is denied to us by the Constitution and not waived by the state.[9]

Thus, we find no constitutional defects with Florida's Sex Offender Act. Appellants' arguments that the Sex Offender Act violates the doctrines of due process, equal protection, travel, and separation of powers are not viable in this instance.

## B. DNA Statute

Appellants next make a terse argument that Florida's DNA Statute violates the federal and state constitutional doctrines of due process and separation of

---

[9]Even if we could assert jurisdiction, Appellants' substantive argument is not compelling. Florida courts and other courts across the country have upheld similar attacks to statutes that label sex offenders or require their registration. See Kelly v. State, 795 So. 2d 135, 137 (Fla. Dist. Ct. App. 2001) (holding that mandatory sexual predator designation did not violate state separation of powers); see also Herreid v. State, 69 P.3d 507, 509 (Alaska Ct. App. 2003) (holding sex offender registration did not violate separation of powers because requirement was regulatory in nature).

powers.[10]  For the reasons that follow, we disagree.

### 1. Due Process

First,  Appellants ask us to enforce FLA. STAT. § 120.54(1)(b), which requires administrative regulations be in place within 180 days of the enactment of a statute requiring such rules.  While the issue of whether such rules are not in place is in serious doubt, see FLA. ADMIN. CODE ANN. r. 11D-6.001, 6.003, the implementation of nuanced state administrative laws does not by itself raise a liberty interest for constitutional due process review.  See Tony L. v. Childers, 71 F.3d 1182, 1185 (6th Cir. 1995). "State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory." Id.  Section 120.54(1)(b) merely gives direction and procedural deadlines to state agencies; it does not grant substantive rights to the Appellants.

### 2. Separation of Powers

Second, Appellants assert a separation of powers claim under the Florida constitution because the DNA Statute divested them of their right to challenge the

---

[10]While Appellants raise the issue that the DNA Statute violates the ex post facto clause of the Constitution, they fail to support their claim with substantive argument.  On appeal, we require appellants to not only state their contentions to us, but also to give "the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  FED. R. APP. P. 28(a)(9)(A).  Appellants' cursory restatement of the issues fails to raise the issue sufficiently for discussion here and is deemed abandoned. See Love v. Deal, 5 F.3d 1406, 1407 n.1 (11th Cir. 1993).

collection and use of a DNA sample. As we stated previously in regard to the Sex Offender Act, however, we will not interpret state law against state officials when such review directly impacts the state. See Pennhurst, 465 U.S. at 117, 104 S. Ct. at 917. Thus, Appellants' final argument fails.

### III. CONCLUSION

Appellants' challenge to the Florida Sex Offender Act and DNA Statute was dismissed by the district court for failure to raise issues of federal constitutional concern. This appeal alleges that those Florida laws violate due process, equal protection, right to travel, and separation of powers doctrines. As we have explained, the motion to dismiss was correctly granted. Accordingly, the motion to dismiss granted by the district court is **AFFIRMED**.