954 So.2d 659 (2007)
DEPARTMENT OF CORRECTIONS, Appellant,
v.
Christopher DAUGHTRY, Appellee.
No. 5D05-3876.
District Court of Appeal of Florida, Fifth District.
April 5, 2007.
*660 Gary L. Grant, of Assistant General Counsel, Tallahassee, for Appellant.
James S. Purdy, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellee.
GRIFFIN, J.
The Florida Department of Corrections ["DOC"] appeals an order of the Seventh Judicial Circuit Court enjoining the DOC from engaging in the "practice of automatically violating the probation of every sex offender who fails to give an address acceptable pursuant to § 948.30(1)(b) Fla. Stat. (2005), at the time of a scheduled release from incarceration," and requiring the implementation of a policy designed to resolve the issue. Sympathetic though we may be to the frustration of the trial court at the actions of DOC and to the notions of essential fairness expressed in its order, we are bound, on procedural grounds, to reverse.
The facts giving rise to the order at issue are these: on August 8, 2000, Christopher Daughtry was sentenced in the Seventh Judicial Circuit in Volusia County to a split sentence of seven years' incarceration to be followed by five years of sex offender probation. Daughtry completed service of the seven-year term of incarceration and was to commence his five-year period of sex offender probation. Daughtry was arrested immediately upon his release from prison and transferred to the Volusia County jail on the ground that he had violated a special condition of his probation. The condition he allegedly violated prohibited Daughtry from "living within 1000 feet of a school, day care center, park, playground, or other place where children regularly congregate." The DOC's asserted basis for taking this action was its statutory obligation to report a compliant residence address for each sex offender releasee. DOC finds this duty in section 944.606(3)(a)(1), Florida Statutes (2005), which provides in pertinent part that: "The Department must provide: . . . the offender's intended address, if known. . . ."
On September 1, 2005, a bond hearing was scheduled for Daughtry. At that time, the trial court realized that Daughtry's "violation" was the inability to supply a compliant address prior to leaving prison and questioned the DOC's basis for conducting a warrantless arrest of Daughtry immediately upon the expiration of his prison term.
Eventually, the trial court issued an Order Modifying Probation. This order contained within it the appealed injunction. The order is admirable in many respects and bears reproducing in its entirety, so it is attached as an appendix to this opinion.
The DOC correctly asserts multiple reasons why the injunctive provisions of the challenged order must be reversed. First, the DOC was not a party to the proceedings and, evidently, no notice was given to DOC that such an order was within the contemplation of the court.[1] Nor had Daughtry filed any motion or sought injunctive relief.[2] Although the DOC's decision to re-arrest probationers like Daughtry before they can exit the prison based on DOC's statutory duty to have an acceptable address for the released prisoner is as baffling to this court as to the trial court, the provisions of the order directed *661 to the DOC were not authorized and are hereby vacated.[3]
ORDER VACATED in part.
ORFINGER and LAWSON, JJ., concur.

APPENDIX
IN THE CIRCUIT COURT, SEVENTH
 JUDICIAL CIRCUIT, IN AND FOR
 VOLUSIA COUNTY, FLORIDA
 CASE NUMBER 99-34205.
STATE OF FLORIDA
vs.
CHRISTOPHER ALEX DAUGHTRY,
Defendant.

ORDER MODIFYING PROBATION
The above cause came to be heard on the Motion To Set Bond by the defendant and the motion of the court, and the court having invited legal and factual argument and comment by the Office of the State Attorney, Seventh Judicial Circuit [hereinafter State], the Department of Corrections, State of Florida [hereinafter DOC], and counsel for the defendant in the course of several hearings conducted over a period of several weeks, and being duly advised in the premises, it is held as follows:
FACTS: On June 23, 2000, a guilty verdict was rendered by a jury on the charge of lewd or lascivious assault upon a child, a second degree felony with a maximum prison sentence of fifteen (15) years. On August 8, 2000, the defendant was sentenced to serve seven (7) years of imprisonment to be followed by five (5) years of sex offender probation. The defendant reached the end of his term of imprisonment on August 6, 2005. Before he was physically released from the state prison the DOC performed a warrantless arrest for a purported violation of probation. The stated basis for the arrest was the defendant's failure to provide an address where he would reside when released to probation.
Paragraph 15(b) of the sex offender probation order entered by this court reads as follows:
The victim being under eighteen (18) years of age, you are prohibited [sic] living within 1,000 feet of a school, day care center, park, playground or other place where children regularly congregate.
Additionally, § 948.30(1)(b), Fla. Stat. (2005), imposes a condition upon sex offender probationers without the necessity of pronouncement in the course of the sentencing hearing:
If the victim was under the age of 18, a prohibition on living within 1,000 feet of a school, day care center, park, playground, or other place where children regularly congregate, as prescribed by the court. The 1,000-foot distance shall be measured in a straight line from the offender's place of residence to the nearest boundary line of the school, day care center, park, playground, or other place where children congregate. The distance may not be measured by a pedestrian route or automobile route.
One other statutory requirement was made known to the court by the DOC. Section 944.606(3)(a)(1), Fla. Stat. (2005), provides that the Florida Department of Law Enforcement [FDLE] shall be furnished information on sex offenders when they are released from prison. The DOC:
[M]ust provide information regarding any sexual offender who is being released *662 after serving a period of incarceration for any offense, as follows:
1. The department must provide: the sexual offender's name, any change in the offender's name by reason of marriage or other legal process, and any alias, if known; the correctional facility from which the sexual offender is released; the sexual offender's social security number, race, sex, date of birth, height, weight, and hair and eye color; date and county of sentence and each crime for which the offender was sentenced; a copy of the offender's fingerprints and a digitized photograph taken within 60 days before release; the date of release of the sexual offender; and the offender's intended residence address, if known. . . .
Emphasis added.
The court first became aware of this case when a hearing was conducted on the defendant's Motion to Set Bond on September 2, 2005. It was explained at the bond hearing that the defendant had given the DOC unsatisfactory addresses that did not meet the distance requirements under either the sex offender probation order or the statute cited above at the time of his anticipated discharge from DOC imprisonment. Under its construction of the law the DOC contends that it has an inescapable statutory obligation to report a satisfactory residence address to the FDLE. It was prevented from meeting its obligation to the FDLE by virtue of the defendant's inability to provide a suitable address. This defendant was arrested immediately by the DOC upon concluding his prison sentence, held in the Marion County Jail, transferred to the Volusia County Jail, and held there without bond following a first appearance.
When the defendant was seen on September 2, 2005, the court did not receive the benefit of a full explanation of his circumstances because the DOC had not been provided notice of the hearing. The court scheduled a continuation of the hearing for September 8, 2005, and required the attendance of all interested parties in an effort to obtain a better explanation. At that time the DOC and the State explained that the probation order and the statutes cited above, when considered in pari materia, obligated the DOC to perform a warrantless arrest before the defendant could be released to the streets. In response to further inquiry by the court the DOC explained that it recognized that the court, if it were not content with the situation, would be free to conduct a probation hearing, find the defendant not guilty of the allegations, and order his release. However, the DOC would not permit the actual release to take place. Instead, the DOC expressed its intent to simply arrest the defendant, again, before he could leave the jail building for yet another violation of probation brought on by his continuing inability to provide a suitable residence address. Further, all agreed, it is within the jurisdiction of the court to set a bond or dismiss the affidavit of violation, but the DOC assured the court it would simply effect another arrest before the defendant could be freed from the jail. Thus, it is virtually guaranteed by the DOC that the defendant will not leave imprisonment regardless of the original sentence by the court or further order of the court.
Temporarily baffled, the court extracted an agreement from the defendant to voluntarily stay in the jail to avoid the "Groundhog Day"-like scenario predicted by the DOC. It was ordered that weekly status conferences would be conducted in an effort to break the impasse. It was hoped that the defendant would be able to locate *663 an acceptable address and that the DOC would assist by dedicating some of its resources to the task. Status conferences were conducted on September 16, September 21, and September 28, 2005, to no avail. The defendant has provided no address suitable under the law. The DOC has adopted and announced its policy and it is clear at this juncture that it has no intention of bending.
This defendant served a term of seven years in a prison. He has not been employed and he has no funds available for his use. While he has family on the outside, the family also has limited resources and has been unable to come to his rescue. They have submitted several addresses for consideration by the DOC, but none have met the requirements of the probation order and the statute. The defendant has skills as a cook and restaurant worker and has worked in that capacity while imprisoned. His ability to earn money is the only asset or resource available to him. At this time he has no idea how he will obtain an address which will pass statutory muster. He believes it is impossible to accomplish this somewhat daunting task of finding a home with no money, no job, and no family or friends able to save the day. The court could not agree more.
To add salt to the wound, the defendant has been placed in "lockdown" at the local jail "for his own protection." Officials there believe he is at risk in the general jail population as a result of an article that appeared in a local newspaper identifying him as a sex offender. In "lockdown" an inmate may not use the telephone. In its effort to "protect" the defendant, the Volusia County Department of Corrections has managed to place the last nail in the coffin built by the DOC.
LAW: There is no appellate authority within the State of Florida which bears directly on the question asserted by the court on its own motion in the instant case; that is, whether the imposition of residency distance requirements by statute and/or a probation order infringe on constitutionally protected rights, either facially or in their application. There has been, however, considerable examination of a closely related topic  the constitutionality of sex offender registration laws  which is instructive. In State v. Moore, 410 F.3d 1337 (11th Cir.2005), the registration requirements of the Florida Sex Offender Act were upheld after consideration of both due process and equal protection challenges. It was specifically held that the rights asserted to have been infringed by registration statutes are not fundamental rights, and the appropriate analysis is thereby the rational basis test.[1] There is *664 no question that the public has a right, and the legislature has a corresponding duty, to insure that the children within our boundaries are safe. The registration laws, as well as the laws compelling a measurable distance between children and sex offenders, obviously bear a rational relationship to a legitimate state interest and any due process argument thereby fails. Equal protection analysis shares the fate. Sex offenders are not members of a class requiring strict scrutiny and, because there is no heightened scrutiny, a statute is within constitutional bounds when "there is any reasonably conceivable state of facts that could provide a rational basis for it." 410 F.3d at 1346. Again, there is no question that the state acts reasonably and responsibly when it protects its children from known risks. The law requiring sex offenders to reside a reasonable distance from children withstands facial constitutional scrutiny for the same reasons that the sex offender registration laws have withstood scrutiny. They are facially valid statutes reasonably designed to bring a level of comfort to the citizens of our state. Clearly the legislature is to be commended for its effort and this court certainly does not take issue with the imposition of residential restrictions per se.
Many years ago it was decided by the policy makers in this state that we would employ imprisonment, probation, and a discretionary combination of the two as appropriate sentences in our courts. In fact this court imposed such a split sentence when the defendant was ordered to serve seven years of imprisonment to be followed by five years of sex offender probation. The DOC has now unilaterally elected to reverse that sentencing tradition for sex offenders. This defendant is absolutely and totally prevented from leaving the jail, even though he has served his time in prison as ordered by this court. His right to serve his probationary sentence as imposed by this court in accordance with the laws adopted by the legislature is being prevented  neither by the statute nor by this court. Rather, the DOC has opted to invent a policy which completely thwarts the intent of both the court and the legislature. When the DOC construes the two statutes so that all defendants must give the DOC an acceptable address (so that the DOC can give it to the FDLE) before the defendants can leave the incarcerative setting, it creates an impossible situation for this defendant.
The ridiculous nature of this requirement is compounded when the DOC files an affidavit violating the defendant's probation. The DOC, by the filing of this affidavit, creates a criminal act where none was intended by those entrusted with the chore of actually defining criminal acts. The very suggestion that the DOC is somehow empowered to stand in the way of judicial and legislative authority by construing a pair of statutes in such a way that it "legislates" criminal conduct is bewildering. The DOC would convert our county jail into the mythical Hotel California, where the defendant is "free to check out any time [he wants], but [he] can never leave."
No branch of the government, especially the executive, has the entitlement to set into place a standard which is impossible to perform, and then elevate the failure to perform to that standard a criminal act. Yet, that is exactly what the DOC has done here. Creation of such an impossible standard is unconscionable. The DOC has an obligation to each and every person in this state, including sex offenders, to apply the laws of this state in conjunction with each another properly, rationally, and reasonably. In this instance there is absolutely nothing about its application of the *665 law that is proper, rational, or reasonable, particularly as it pertains to the defendant.
It is also remarkable that the DOC has interjected itself into the world of policy making to the extent that it not only usurps the legislative and judicial branches, but also avoids its own responsibility. It is, after all, the responsibility of the DOC to enforce legislatively defined and judicially ordered policy by supervising probationers. It is neither the DOC's responsibility to rewrite the law by creative construction, nor to overrule decisions of judicial bodies by its acts. It is respectfully suggested that the community would be better served if the DOC would apply its policy-making skills to the task of creating a meaningful internal policy for the proper, rational, and reasonable supervision of sex offenders ordered to its supervision.
RULING: Based upon the foregoing, this court is compelled to rule that, while the statutes in question are facially valid, their application by the DOC is unconstitutional in this case. Since the DOC has steadfastly used its authority to prevent the release of prisoners and has assured the court that it will continue to do so in the foreseeable future, the DOC is hereby ordered to:
1. Immediately cease and desist its practice of automatically violating the probation of every sex offender who fails to give an address acceptable pursuant to § 948.30(1)(b), Fla. Stat. (2005), at the time of a scheduled release from incarceration.
2. Immediately create and implement a policy by means of which the DOC shall review the circumstances of each sex offender at or before the scheduled time of release from incarceration to determine whether the defendant has made a good faith effort to locate an acceptable residence address. In those instances in which a defendant has not made such a good faith effort, or if the DOC in the reasonable exercise of its common sense and discretion is unable to make such a determination, the DOC shall arrange to have the matter brought before the court forthwith for a determination. If the DOC determines that a good faith effort has been made by the defendant and he remains unable to locate a residence acceptable under the statutes and the probation order, the defendant shall be permitted to leave the incarcerative setting without further interference of the DOC, subject to the sex offender probation plan which follows:
a) All provisions of any existing probation order shall remain in full force and effect to the extent they do not conflict with this order and they are hereby incorporated by reference. In the event of conflict, this order shall prevail.
b) All statutes shall be applied without fail, except to the extent that their particular application by the DOC has been discussed in this order. Any conflicts of statute identified by the State or the DOC in the future which are not addressed in this order shall be brought before the court forthwith prior to any action or inaction detrimental to the community or this probation plan.
c) The defendant shall be monitored by means of uninterrupted GPS monitoring until such time as he has satisfied the residency requirements discussed herein. A probation officer shall have daily personal contact with the defendant to insure compliance with all probationary requirements. The DOC shall be free to institute additional reasonable supervision or monitoring as it deems appropriate to insure the safety of the public. It is the intent of this order to impose minimal standards and the DOC is not limited in the event it wishes to *666 exercise its discretion to impose further reasonable conditions.
d) The defendant shall become employed immediately upon his release to the extent that he is physically capable. He may be employed in any legal capacity, recognizing that it is difficult for a sentenced sex offender to find employment in traditional venues. He may be employed as a day laborer, an independent contractor, or in any other capacity which will provide income within the law. That income will be applied to satisfying the residency requirements herein to the extent reasonably possible.
e) The DOC shall provide financial counseling, assistance, and advice to insure the probationer is applying his funds appropriately so as to enhance his ability to locate suitable housing as soon as practicable.
f) The DOC shall assist in obtaining suitable housing by any means within its ability, including the utilization of First Step funds and any other funds or assistance which are available to the DOC for assisting its probationers in complying with the law.
g) The DOC shall permit the defendant to temporarily reside in any place that meets the distance requirements of the statute and the probationary order, so long as the address describes the residence in a manner that would permit a person of average intelligence to locate the place of residence within a reasonable time. Metes and bounds descriptions shall be permitted. For example, an acceptable address under this order may be: Beneath the palmetto bush 45' from the Northern edge of U.S. 92 along the Easterly side of the power easement under the power wires 2.1 miles West of the intersection of U.S. 92 and Red John Road. Another might be: On the bank of the St. Johns River beneath the West side of the William Chappel Memorial Bridge which crosses the river at Astor. This court expressly recognizes the difficulty for a sex offender in this community to provide a "Post Office" address acceptable to the DOC under its current policy.
h) The DOC shall evaluate daily the progress of the defendant in acquiring and maintaining employment and locating suitable housing to insure that the defendant continues to comply with the letter and spirit of this order.
i) Written reports shall be provided to the court on the first day of each month until the defendant is in complete compliance with the housing requirements under the statute and the probation order.
3. The court reserves jurisdiction to make any modifications or amendments to this order necessary to insure that the safety needs of the public are met and that the defendant is given a fundamentally fair chance to comply with the law.
4. The court reserves jurisdiction to issue an order to show cause why the offender shall not be held in contempt of court upon the filing of an appropriate affidavit in the event that the probationer or the DOC fails to comply with the terms and conditions of this order.
The court is not entirely without empathy for the DOC. It cannot be easy to become the public target of others every time a probationer commits a horrible crime. Very often the opportunity exists for these crimes to be committed because of a miscalculation by others in the government. Of course, it is unfair for the DOC to become the scapegoat for every thing that goes wrong. If we are committed to a governmental policy that includes probation as a sentencing option, there will invariably be instances when criminals *667 serving probationary sentences do what criminals can reasonably be expected to do  commit crimes. We should not be surprised when this occurs. We certainly should not gather to throw the DOC under the bus. Instead, we should learn from our experience and diligently apply ourselves to the task of improving our skills. It is lamentable that criminals commit crimes. But it is silly to assume that the DOC should be accountable for the criminal conduct of every criminal in its charge. The DOC has been driven in its policy determinations in recent years by outside response to the commission of several horrific crimes by probationers. The court fears that the nervous environment has led to the adoption of this ridiculous policy by the DOC. Perhaps the DOC has designed this policy in an effort to avoid being held accountable for the criminal conduct of its charges. If so, it is sad. If true, it would leave the impression that the DOC is trying to circle its wagons for self-protection in such a way that it throws the judicial branch under the same bus that it seeks to dodge. The judicial branch is ethically prohibited from engaging in political decision-making and absolutely prohibited from making public explanations of its decisions. How terribly unfair it would be for the DOC to lay its responsibilities at the feet of those who are helpless to explain themselves in the public forum. It is fervently hoped that the DOC had higher goals when it adopted this particular policy.
Lest there be any misunderstanding whatsoever, this court is not abandoning a long-standing commitment to children and their needs in this community in favor of convicted sex offenders. Every child deserves a safe community and each of them specifically deserves to be free of the criminals who would prey upon them. To this court there is not a crime more deserving of punishment than a crime committed upon the helpless among us. Those who steal our children's innocence and drag them through the despicable horrors seen daily in our courts are most deserving of the vile feelings they generate in all of us. The court does not wish, by means of this order, to become a flag waver or a banner bearer for sex offenders.
There are times, however, when constitutional notions of fundamental fairness must come to bear, even for sex offenders. When a man, even a sex offender, has served his time and thereby paid his debt to society, it is fundamentally unfair to artfully devise rules that make it impossible for him to function or to even be released from incarceration. The law should always be applied to permit those who have been adequately punished under the law to live with reasonable restrictions so long as they do so in a manner that threatens no one, especially our children. This order is an attempt to accomplish no more. It should be interpreted by no one as an indication that any sex offender probationer, or anyone else for that matter, who violates this order or the law will not be subject to the full weight of the law.
DONE AND ORDERED.
/s/ Joseph G. Will
Joseph G. Will
Circuit Judge
Copies to: Department of Corrections
 State Attorney, Seventh Judicial
Circuit
 Scott Swain, Esquire, for the
defense
NOTES
[1] DOC's Deputy General Counsel did attend one of the several hearings conducted prior to entry of the appealed order, at the request of the trial judge.
[2] See State Dep't of Highway Safety & Motor Vehicles v. Tidey, 946 So.2d 1223 (Fla. 4th DCA 2007), and cases cited therein.
[3] Daughtry offers several avenues for rejection of DOC's appeal, from lack of jurisdiction to exercise of inherent authority, but none have merit.
[1] There may be circumstances under which a fundamental right is infringed by the imposition of the distance requirements considered herein, but it is not within the province of this court to assert such claims or unnecessarily expand on the rulings of appellate courts when there are other available means of resolving the issue. The Supreme Court of Iowa in State v. Seering, 701 N.W.2d 655 (Iowa 2005), examined the precise question at issue here. The findings of that court were limited by procedural and pleading infirmities. A thorough examination of the remaining unresolved topics with a slight factual twist may result in different conclusions. If either a fundamental right to travel or a fundamental right to exercise familial relationships, or even a simple recognition that the fundamental right of liberty had been thoroughly examined by the Iowa court, the outcome could have been completely different. That analysis applied to this case could reasonably result in a determination that this defendant's fundamental rights are being crushed by the implementation of statutory scheme in Florida. To remedy this particular injury to this particular defendant, though, it is not necessary to indulge that severe a finding.