990 So.2d 1191 (2008)
Michael Stephen KING, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-863.
District Court of Appeal of Florida, Fifth District.
September 19, 2008.
*1192 James S. Purdy, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Carlos A. Ivanor, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
The question presented is whether a defendant's failure to provide a suitable residence address prior to his release from prison constitutes a willful and substantial violation of the condition of his sex offender probation that prohibits him from living within 1,000 feet of designated places where children regularly congregate, when the defendant had not yet been released from prison and when the condition of probation does not require that the defendant provide a suitable address. The trial court answered yes, but we answer no. We therefore reverse.
King entered a plea of guilty to attempted sexual battery upon a child under 12 years of age, lewd and lascivious exhibition to a minor, and lewd and lascivious conduct with a minor. All three offenses were committed in October 2001. The trial court found that King was a sexual predator and ordered that he be imprisoned for a term of 5 years, followed by a period of 10 years' sex offender probation. Special Condition 2 of King's sex offender probation specifically provides that he is prohibited from "living within 1,000 feet of a school, day care center, park, playground, or other place where children regularly congregate, as prescribed by the court." Although designated a "Special Condition" in the order under review, this condition, which was imposed pursuant to section 948.03(5)(a)2., Florida Statutes (2001),[1] without the necessity of oral pronouncement by the trial court at sentencing, is a standard condition statutorily imposed on defendants like King who are convicted of certain sex offenses. For purposes of consistency with the order under review, we will refer to this condition as Special Condition 2.
On the last day of King's prison term, and before he was released to begin his term of probation, King was arrested and charged with violating Special Condition 2. He was transported to the Sumter County jail, where he currently resides. With his prison term completed, but still confined, King was brought before the trial court for his violation of probation hearing.
The testimony and evidence presented at the hearing reveals that prior to King's prison release date, King was asked by a classification officer in charge of releases at the correctional institution where he was imprisoned to provide an address where he would live upon release. King indicated that he would reside with his parents. Although no testimony was offered regarding King's financial status, according *1193 to the information in the record and the finding by the trial court,[2] it appears that King was indigent and this may have been why he designated his parents' home as his residence. In any event, King's parents expressed concern about King residing with them, primarily because they had a granddaughter living with them and other grandchildren who visited periodically. However, the parents indicated that they would attempt to find King a suitable residence, and King remained optimistic that his parents would be able to do so. Unfortunately for King, his probation officer deemed the parents' home to be unsuitable and another residence was apparently not found.
At the conclusion of the hearing, the trial court found that King willfully and substantially violated Special Condition 2 of his probation, not because he actually lived within 1,000 feet of any of the areas designated in the special condition, but because he was unable to provide, while he was still imprisoned, a residence address that his probation officer would deem suitable. The trial court entered an order modifying King's probation to require that King reside in the Sumter County jail for 11 months and 29 days, or until such time as King had a suitable residence.
Although section 948.03(6), Florida Statutes (2001) (currently section 948.03(2), Florida Statutes (2008)), authorizes modification of a defendant's probation at any time, it is impermissible to enhance the conditions and terms of probation unless the court determines that the defendant committed a willful and substantial violation. Lippman v. State, 633 So.2d 1061, 1064 (Fla.1994); Clark v. State, 579 So.2d 109, 110-11 (Fla.1991); Gearhart v. State, 885 So.2d 415, 417 (Fla. 5th DCA 2004); Garvison v. State, 775 So.2d 340, 341 (Fla. 2d DCA 2000); Cole v. State, 745 So.2d 1001, 1002 (Fla. 2d DCA 1999); Casterline v. State, 703 So.2d 1071, 1072 (Fla. 2d DCA 1997). King contends that he could not have violated Special Condition 2 because he was incarcerated at the time he was alleged to have committed the violation and because his probation had not commenced. He also asserts that Special Condition 2 does not require him to provide a suitable address prior to his release from prison. Accordingly, he argues it was error for the trial court to modify and enhance his probation by adding the county jail sentence. We agree.
Special Condition 2 only prohibits King from living within 1,000 feet of specifically designated places. He could not have lived within any of the designated places because he was never released from the confines of the Department of Correctionsthat is why the trial court found that King violated Special Condition 2 by failing to provide the Department with a suitable address prior to his release from prison. However, neither Special Condition 2 nor the statute requiring its imposition, section 948.03(5)(a)2., Florida Statutes (2001), requires King to give a suitable address prior to his release from prison or, for that matter, that he give any address at all. Therefore, failing to provide a suitable address does not provide a basis to find a willful and substantial violation of that condition. See Jones v. State, 876 So.2d 642, 644 (Fla. 1st DCA 2004) ("Revoking probation, however, for violating conditions neither orally pronounced nor embodied in a written order violates a defendant's due process rights under the Florida and United States Constitutions."); *1194 Perez v. State, 805 So.2d 76, 79 (Fla. 4th DCA 2002) ("Because the condition which appellant violated was not included in the order of probation, it cannot be the basis for the revocation of his probation and his subsequent sentence. In addition, the court could not revoke appellant's probation for violating a condition unilaterally imposed by his probation supervisor....").
King argues that because he was serving his prison sentence at the time he failed to provide a suitable address, his probation had not yet commenced and, therefore, he could not have committed a violation of the terms and conditions of his probation. It has been firmly established by the Legislature and the courts for quite some time that the period of probation commences when the defendant is released from incarceration. § 948.01(6), Fla. Stat. (2001) ("The period of probation or community control shall commence immediately upon the release of the defendant from incarceration, whether by parole or gain-time allowances.");[3]Swanson v. State, 656 So.2d 503 (Fla. 2d DCA 1995); Johnson v. State, 561 So.2d 1254, 1255-56 (Fla. 2d DCA 1990) ("The fact that [the defendant] was mistakenly released from custody before serving a prison sentence did not terminate that sentence and commence his probation. The appellant's probation will not commence until he serves his prison sentence.... His failure to report four years before he is scheduled to start his probation does not constitute a willful or substantial violation of his probation in this case." (citations omitted)); Vihinen v. State, 368 So.2d 626, 627 (Fla. 4th DCA 1979) ("It appears obvious ... that the legislature intended probation to follow, and not precede, any period of incarceration."). The sentencing order also makes it clear that King's prison sentence is to be "followed by" probation. However, the courts have held that a defendant's probation may be revoked prior to the commencement of probation if he commits an act of misconduct that demonstrates his unfitness for probation. Stafford v. State, 455 So.2d 385, 386 (Fla.1984) (quoting with approval Martin v. State, 243 So.2d 189, 191 (Fla. 4th DCA) ("[T]he court can revoke an order of probation, the term of which has not yet commenced, should the court determine that the defendant probationer has been guilty of misconduct occurring subsequent to the entry of the order of probation."), cert. denied, 247 So.2d 63 (Fla.1971)).[4] Here, not only did King not violate any condition of his probation, he did not commit any crime or engage in any act of misconduct prior to the commencement of his probation that would demonstrate his unfitness as a probationer. Hence, under these circumstances, we fail to see how the trial court could have properly revoked King's probation.
We note, parenthetically, that the Department of Corrections attempted to obtain King's address before he was released from prison pursuant to section 944.606(3)(a)1., Florida Statutes (2001) (requiring DOC to furnish the Florida Department of Law Enforcement with a sex offender's "intended residence address, if known."). Our decision in Department of Corrections v. Daughtry, 954 So.2d 659 *1195 (Fla. 5th DCA 2007), reveals that the instant case is not the first time the Department has arrested a defendant prior to his scheduled release date from prison for violating the same condition of probation King is charged with violating, based solely on the defendant's failure to provide a suitable address prior to release. This court in Daughtry, after noting that the Department's duty to disclose pursuant to section 944.606(3)(a)1. arises only if the address is known to the Department, commented that "the DOC's decision to rearrest probationers like Daughtry before they can exit the prison based on DOC's statutory duty to have an acceptable address for the released prisoner is as baffling to this court as to the trial court...." Id. at 660.[5] Although we recognize the salutary purpose of the reporting requirement contained in section 944.606(3)(a)1., our analysis of that statute reveals that there is no provision that gives the Department the authority to institute violation of probation proceedings based on its inability to acquire the defendant's address prior to his release from prison.
We conclude that it was improper for the Department to seek revocation of King's probation under the circumstances of this case and that it was error for the trial court to enter the order under review modifying King's probation.
REVERSED and REMANDED.
MONACO and TORPY, JJ., concur.
NOTES
[1] Section 948.03(5)(a)2., Florida Statutes (2001) (currently section 948.30(1)(b), Florida Statutes (2008)), provides that the court must impose the following standard condition of probation for specified sex offenders:

If the victim was under the age of 18, a prohibition on living within 1,000 feet of a school, day care center, park, playground, or other place where children regularly congregate, as prescribed by the court.
[2] Specifically, the trial court observed at the conclusion of the violation of probation hearing that the defendant "has apparently a financial inability to comply with these terms of his probation...."
[3] This provision is currently found at section 948.012(1), Florida Statutes (2008).
[4] In Martin, the court held that the defendant's commission of a crime while incarcerated and before he started to serve the term of his probation was a sufficient basis to revoke his probation. In Crutchley v. State, 705 So.2d 966, 967 (Fla. 5th DCA 1998), this court held that smoking marijuana before release from prison is "[m]isconduct occurring subsequent to the entry of an order of probation [that] permits a court to revoke probation."
[5] Appended to this court's opinion in Department of Corrections v. Daughtry, 954 So.2d 659 (Fla. 5th DCA 2007), is the order rendered by the trial judge. In discussing the statutes requiring sex offenders to reside a reasonable distance from children and the sex offender registration statutes, Judge Joseph Will expressed his bewilderment at the action taken by the Department, observing:

When the DOC construes the two statutes so that all defendants must give the DOC an acceptable address (so that the DOC can give it to the FDLE) before the defendants can leave the incarcerative setting, it creates an impossible situation for this defendant.
The ridiculous nature of this requirement is compounded when the DOC files an affidavit violating the defendant's probation. The DOC, by the filing of this affidavit, creates a criminal act where none was intended by those entrusted with the chore of actually defining criminal acts. The very suggestion that the DOC is somehow empowered to stand in the way of judicial and legislative authority by construing a pair of statutes in such a way that it "legislates" criminal conduct is bewildering. The DOC would convert our county jail into the mythical Hotel California, where the defendant is "free to check out any time [he wants], but [he] can never leave."
Id. at 664.