William R. GROSSCUP,
Petitioner/Plaintiff,

v.

Colonel Alfred A. PANTANO, Jr., District Commander for the Army Corps of Engineers, Jacksonville District, United States Army Corps of Engineers, Florida Department of Community Affairs, Florida Department of Environmental Protection, City of Key West, and United States of America, Respondents/Defendants.

Case No. 10–10015–CIV.

United States District Court,
S.D. Florida,
Key West Division.

July 22, 2010.

John Marcus Siracusa, Joseph William Janssen, III, Laurel Ruthanne Wiley, Mark Gerard Keegan, Richard Chambers Valuntas, Rosenbaum Mollengarden Janssen & Siracusa PLLC, West Palm Beach, FL, for Petitioner/Plaintiff.

James Alan Weinkle, United States Attorney's Office, Miami, FL, Jonathan A. Glogau, Attorney General Office, Tallahassee, FL, Michael Thomas Burke, Johnson Anselmo Murdoch Burke Piper & Hochman PA, Fort Lauderdale, FL, for Respondents/Defendants.

### ORDER ON MOTIONS TO DISMISS

JOSE E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Defendants, Department of Community Affairs and Department of Environmental Protection's Motion to Dismiss Amended Complaint (**D.E. No. 22**), Defendant City of Key West's Motion to Dismiss First Amended Complaint (D.E. No. 18), and Federal Respondent/Defendants' Motion to Dismiss First Amended Verified Petition for Writ of Mandamus and Complaint for Declaratory Judgment and Regulatory Taking (D.E. No. 41). This action arises from Petitioner/Plaintiff William R. Grosscup's ("Plaintiff") attempt to rebuild his home on his property after it was accidentally destroyed by fire on June 14, 2005. (D.E. No. 15 at 3). Plaintiff has filed a Verified Petition for Writ of Manda-

mus against Respondent Colonel Alfred A. Pantano, Jr. ("Respondent" or "Pantano"), District Commander Commander for the Army Corps of Engineers. Plaintiff has also filed suit against Defendants United States Army Corps of Engineers ("Corps"), Florida Department of Community Affairs ("DCA"), Florida Department of Environmental Protection ("DEP") and the City of Key West ("City") for declaratory judgment. In addition, Plaintiff has alleged a claim for a regulatory taking against the DCA, the DEP, the City, and the United States of America ("United States"). Respondent and all Defendants have moved to dismiss the claims asserted against them. After careful consideration and for the reasons set forth below, the Court grants Defendants the DCA, the DEP, and the City's motions to dismiss and grants in part denies in part the motion to dismiss filed by the Corps, the United States, (collectively the "Federal Defendants"), and Pantano.

### I. Relevant Factual and Procedural Background

Plaintiff owns property in Key West, Florida consisting of "36,366 square feet of which 2,550 square feet is upland and the balance of which (33,816 square feet) is privately owned submerged land." (D.E. No. 15 at 3). On June 14, 2005, a fire destroyed Plaintiff's home on this property. *Id.*

After the fire, Plaintiff began attempting to obtain a permit to build a replacement home on his land. *Id.* at 4. In July or August of 2005, Plaintiff received a Letter of Permission from the DEP and a permit from the Corps allowing him to replace twenty-six of the wooden pilings, which supported his destroyed home, with concrete pilings. *Id.* The Corps and the DEP then required Plaintiff to modify his initial permit before he could begin construction on his new home. *Id.* On February 23,

2006, Plaintiff submitted his modified initial joint permit application, which included the engineering plans for a design known as Plan A, to the Corps. *Id.*

On May 19, 2006, the DCA objected to the Plan A design. *Id.* Shortly thereafter, the Corps denied Plaintiff's Plan A permit application without prejudice based on the DCA's objections. *Id.* at 5. Plaintiff then filed a "Request for Relief" with the DCA pursuant to section 70.51 of the Florida Statutes, arguing that the DCA's objections were without merit. *Id.* On September 15, 2006, the DEP also denied Plaintiff's permit based on the DCA's objections and other issues relating to water quality. *Id.* On November 16, 2006, Plaintiff filed a "Request for Relief" with the DEP pursuant to section 70.51 of the Florida Statutes and a "180 Notice of Claim" with the DEP and the DCA pursuant to section 70.0001 of the Florida Statutes. *Id.* at 6. On May 17, 2007, Plaintiff filed a "Bert Harris lawsuit"[1] against the DCA and the DEP in Monroe County Circuit Court, arguing that "the DCA and [the] DEP's actions and omissions, including but not limited to, their application of land development regulations to . . . [Plaintiff's] property caused an inordinate burden to . . . [Plaintiff's] existing and vested rights within the meaning of Section 70.0001, Florida Statutes." *Id.* Plaintiff, the DCA, and the DEP eventually entered into a settlement agreement relating to this lawsuit. *Id.* Under this agreement, Plaintiff could fill a portion of his submerged lands, giving him a place to build his new home, and in consideration of this, the DEP would re-ceive a conservation easement over the rest of Plaintiff's submerged lands. *Id.*

Pursuant to this agreement, Plaintiff redesigned his plan and prepared a new joint permit application. *Id.* at 6–7. On June 11, 2008, Plaintiff submitted this plan, known as Plan B,[2] and his new permit application to the DEP and the Corps. *Id.*

Next, Plaintiff attempted to negotiate a developer agreement with the Interim City Planner for Key West, Amy Kimball–Murley. *Id.* at 7. Plaintiff alleges, however, that she refused to negotiate in good faith and instead required that he "among other things" obtain "a number of variances before he would be entitled to rebuild his home, some of which were unobtainable." *Id.* On June 6, 2008, Plaintiff appealed the City Planner's decision to the Board of Adjustment for Key West. *Id.* at 8.

The Key West City Attorney, however, instructed the City Clerk not to agenda Plaintiff's Notice of Appeal, and on October 24, 2008, Plaintiff served his section 70.001 "180 day Notice of Claim on Key West." *Id.* On November 3, 2008, Plaintiff filed a Verified Petition for Writ of Mandamus against Key West in the Monroe County Circuit Court seeking to compel the City Attorney and the City Clerk to place his appeal on the agenda of the Board of Adjustment. *Id.*

On January 5, 2009, the Corps sent Plaintiff a letter stating that his application based his Plan B was deemed withdrawn[3] because Plaintiff allegedly failed to provide certain requested additional information. *Id.;* (D.E. No. 15, Exh. 9 at 1–2).

---

**1.** "On May 18, 1995, Governor Chiles signed the Bert J. Harris, Jr. Private Property Rights Act into law. Fla. Stat. Chapter 70 (1995)." *Bloomingdale Dev., LLC v. Hernando County,* No. 8:07–cv–575–T–30MAP, 2009 WL 347786, at *5 (M.D.Fla. Feb. 11, 2009). This Act created "a new cause of action to provide compensation to a landowner when the actions of a governmental entity impose an 'in-ordinate burden' on the owner's property, without rising to the level of a regulatory taking." *Id.*

**2.** This permit application based on Plan B is also referred to as the 2008 application.

**3.** Plaintiff has termed this a "deactivation" of his application. *See* (D.E. No. 15 at 8).

Plaintiff disagreed with this action taken by the Corps, and the reasons the Corps stated for the withdrawal of his application. (D.E. No. 15 at 9–10). Plaintiff filed an Administrative Request for Appeal with the South Atlantic Division of the Corps based on this letter withdrawing his application. *Id.* at 10. The Corps denied the appeal, stating that the withdrawal of a permit application was not an appealable action under 33 C.F.R. § 331.2. *Id.;* (D.E. No. 15, Exh. 12). On April 28, 2009, Plaintiff filed another new joint permit application with the DEP and the Corps based on a new design known as Plan C.[4] (D.E. No. 15 at 11).[5]

Plaintiff states that on May 19, 2009 the City "issued its final ripeness decision" to Plaintiff "which informed him ... [that the City] was not willing to grant and/or waive the variances it believed were required for him to rebuild his home pursuant to the settlement offer that had been made by [the] DEP and [the] DCA." *Id.* Plaintiff does not attach this decision to his complaint nor does he further explain in his complaint why this was a "final ripeness decision."

On May 29, 2009, Plaintiff filed another "Bert Harris lawsuit" in the Monroe County Circuit Court. *Id.* In this lawsuit, Plaintiff named the City as a defendant, and this case was consolidated with the lawsuit filed against the DCA and the DEP. *Id.*[6] On December 16, 2009 the Monroe County Circuit Court entered a Writ of

Mandamus against the City Attorney and the City Clerk, ordering them to place Plaintiff's Notice of Appeal relating to the required variances on the agenda of the Board of Adjustment. *Id.* at 13. The matter was placed on the agenda for the Board of Adjustment, and on February 16, 2010, Plaintiff's appeal was denied. *Id.* at 15 Plaintiff states without further explanation that the denial of his appeal "was final." *Id.*

The DEP has not raised any objection to Plaintiff's Plan B or Plan C joint permit application and has also never issued a permit to Plaintiff. *Id.* at 15. The City has objected to Plaintiff's Plan B joint permit application and required a number of variances. *Id.* Plaintiff states that some of these variances are "not obtainable." *Id.* The Corps has never approved or denied Plaintiff's permit application based on Plan B [7] or his permit application based on Plan C. *Id.* at 15–16.

On February 22, 2010, Plaintiff instituted this action by filing a Verified Petition for Writ of Mandamus and Complaint. *See* (D.E. No. 1). He has since filed an Amended Verified Petition for Writ of Mandamus and Complaint for Declaratory Judgment and Regulatory Taking (D.E. No. 15), which is the operative pleading. In his amended petition/complaint, Plaintiff first seeks a Writ of Mandamus to require Respondent Pantano, the district commander of the Corps, to either approve

4. This permit application based on Plan C is also referred to as the 2009 application. (D.E. No. 15, Exh. 9).

5. Plaintiff alleges that since he filed this permit application, he has gone back and forth with the Corps with regard to providing them information relating to his application. He also alleges that he has requested numerous status updates. *See* (D.E. No. 15 at 12–14).

6. Plaintiff, the City, the DEP and the DCA have recently entered into a settlement agree-

ment concerning the Bert Harris lawsuits. *See* (D.E. No. 36 at 2). However, Plaintiff has filed a motion to enforce this agreement in the state court. *See* (D.E. No. 44). Thus, it is unclear whether this settlement agreement remains in effect. The Federal Defendants, however, have indicated that there is a new settlement proposal. See (D.E. No. 48 at 2).

7. The Corps, however, did issue a letter stating that it was deeming Plaintiff's permit application based on Plan B as withdrawn. (D.E. No. 15, Exh. 9).

or deny Plaintiff's Plan B and Plan C joint permit applications. (D.E. No. 15 at 16).

Plaintiff also filed a two-count Complaint against the Corps, the DEP, the DCA, the City, and the United States. Plaintiff has titled Count Two[8] "Declaratory Judgment" and in this count Plaintiff asks the Court

> to enter a declaratory judgment: (a) that the joint and/or collective actions of .. [the Corps,] [the] DCA, [the] DEP[,] and ... [the City], including but not limited to, their objections, denials, deactivations, extraordinary delays, stonewalling, perpetual requests for information, and their intentional frustration of .. [Plaintiff's] administrative and legal remedies, constitute a temporary and/or permanent regulatory taking of ... [Plaintiff's] property in violation of his rights under the ... [Fifth] and/or ... [Fourteenth] Amendments to the United States Constitution; (b) whether damages for the joint and collective regulatory taking should be apportioned among .. [the Corps, the] DEP, [the] DCA [,] and ... [the City] pursuant to their comparative fault; and (c) the determination of the apportionment of each Defendants' fault for their collective and/or joint regulatory taking of ... [Plaintiff's] property.

(D.E. No. 15 at 22).

In Count Three, Plaintiff alleges that "[a]s a proximate result of the regulatory actions and/or omissions of" Defendants, Plaintiff has been denied "all economically beneficial or productive use of his property and the resultant loss in property value" without "just compensation." *Id.* at 25. Plaintiff seeks a judgment for damages for the alleged regulatory taking. *Id.* Respon-

dent and the Defendants move to dismiss these claims.

## II. Analysis

Respondent and Defendants have moved to dismiss all Plaintiff's claims asserted against them. Respondent moves to dismiss Plaintiff's Petition for Writ of Mandamus, arguing that this Court lacks jurisdiction over Plaintiff's claim for mandamus relief. Defendants also move to dismiss the claims asserted against them.

### A. Motion to Dismiss Petition for Writ of Mandamus

First, Respondent argues that this Court does not have jurisdiction over Plaintiff's claim for mandamus relief. 28 U.S.C. § 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "In resolving whether ... jurisdiction is present [over a claim brought pursuant to 28 U.S.C. § 1361], allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction." *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir. 1980).[9] "The test for jurisdiction is whether mandamus would be an appropriate means of relief." *Id.* "Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) 'no other adequate remedy [is] available.'" *Cash v. Barnhart,* 327 F.3d 1252, 1258 (11th Cir.2003) (quoting *Jones,* 609 F.2d at 781). Respondent Pantano argues that Plaintiff does not have a clear

---

8. Plaintiff has labeled his Petition for Writ of Mandamus as Count I. *See* (D.E. No. 15 at 16).

9. In *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

legal right to mandamus relief, and that Respondent does not have a clear duty to act.[10] After careful consideration, this Court grants in part and denies in part Respondent's motion to dismiss finding Plaintiff has sufficiently alleged this Court's jurisdiction with respect to his 2009 or Plan C application and has not sufficiently alleged this Court's jurisdiction with respect to his 2008 or Plan B application.

First, Respondent argues that Plaintiff does not have a clear right to the relief requested. Plaintiff asks the Court to require Respondent to approve or deny his permit applications. Respondent argues that the Corps has the discretion as to when and if it will take final action on a permit application, and thus, Plaintiff does not have a clear right to an Order directing the Corps to make a decision as to his permit application.[11] The Court disagrees. Although there is no congressionally mandated time line for the processing of applications, the Corps most certainly has a nondiscretionary duty to make a decision on a complete application. *See* 33 C.F.R. § 325.2 (setting time limits for the evaluation process);[12] *see also Norton Construction Co. v. U.S. Army Corps of Engineers,* No. 1:03–CV–02257, 2006 WL 3526789, at *7–9 (N.D.Ohio Dec. 6, 2006) (finding that the Corps has a nondiscretionary duty to grant or deny Plaintiff's permit application under the Clean Water Act pursuant to section 706(2) of the Administrative Procedures Act). An unreasonable delay in making such a decision states a claim for mandamus relief. *In re American Rivers and Idaho Rivers United,* 372 F.3d 413, 418 (D.C.Cir.2004). Thus, here, where Plaintiff has alleged an extraordinary delay in the processing of his permit applications, he has stated a claim. *See* (D.E. No. 15 at 16, 24–25).[13]

Second, Respondent argues that there is no clear duty to act because Plaintiff has withdrawn his 2008 application and his 2009 application is incomplete. The Court agrees that based on the complaint and its attachments, Plaintiff's 2008 application or his application based on Plan B is no longer pending before the Corps. *Id.* at 8; *Id.,* Exh. 9 at 1–2. Whether or not the Corps

---

**10.** Respondent also states that "Plaintiff has failed to exhaust all other avenues of relief, given his pending application is incomplete." (D.E. No. 41 at 16). The Court finds this argument is better addressed on summary judgment for the same reasons discussed below.

**11.** Respondent also argues that because Plaintiff has failed to allege the existence of a nondiscretionary duty 28 U.S.C. § 1361 does not waive the sovereign immunity of the United States. As stated above, the Court, however, finds that Plaintiff has alleged the existence of a nondiscretionary duty. Moreover, it is unclear what Respondent is attempting to argue as this Court clearly has the authority under section 1361 to compel an officer or employee of the United States to perform a duty owed to Plaintiff.

**12.** 33 C.F.R. § 325.2 contains certain mandatory duties relating to the issuance of a decision on a permit application. For example, section 325.2(a)(6) states "the district engi-

neer will determine in accordance with the record and applicable regulations whether or not the permit should be issued." Section 325.2(d)(3) also states that a district engineer "will decide on all applications not later than 60 days after receipt of a complete application" unless certain exceptions apply to an application. Thus, it is clear that there is a mandatory duty for a district engineer to either grant or deny an application.

**13.** To the extent Respondent argues that Plaintiff has no clear right to relief because his application is not complete, the Court finds it improper and inappropriate to address this issue. First, this argument was made for the first time in the Federal Defendants' Reply Brief. *See* (D.E. No. 48 at 4). Moreover, this argument necessarily implicates factual questions and it is more appropriately raised in a motion for summary judgment.

wrongfully has deemed this application as "withdrawn" is not an issue that is appropriate for consideration on a writ for mandamus relief. The Court, however, disagrees that Plaintiff's claim for mandamus relief relating to his 2009 or Plan C application should be dismissed based on Respondent's argument that it is incomplete.

Respondent specifically argues that Plaintiff's application is incomplete because he has not provided the Corps with a State of Florida water quality certification, a Coastal Zone Management Certification, and other "additional information and clarification regarding a seawall noted in the plans." [14] (D.E. No. 41 at 12). The Court finds, however, that this factual issue is best addressed in a motion for summary judgment. Thus, the Court denies Respondent's motion to dismiss with regard to the mandamus relief requested as to his application based on Plan C.[15]

## B. Motion to Dismiss Complaint

All Defendants have also moved to dismiss Plaintiffs claims in his complaint. Specifically, all Defendants have moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction and the Federal Defendants have moved to dismiss Plaintiff's claims for failure to state a claim upon which relief may be granted. The Court grants the motions to dismiss filed by Defendants the DEP, the DCA, and the City and denies the Federal Defendants' motion to dismiss.

### 1. Subject Matter Jurisdiction

All Defendants have also moved to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A litigant may challenge a court's subject matter jurisdiction facially or factually. In considering a facial attack, a court looks at the face of the complaint, taking the allegations in the complaint as true, and simply determines whether a plaintiff has sufficiently alleged a basis for the court's jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990). " 'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.' " *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)).

All Defendants move to dismiss this action, arguing that Plaintiff's claims are not ripe, and the Federal Defendants argue that Plaintiff's claims are moot. Defendants the DCA and the DEP have also moved to dismiss this action for lack of subject matter based on Eleventh Amendment Immunity. The Court grants the DCA, the DEP, and the City's motions to dismiss, finding the claims asserted against them are not ripe. Alternatively, the Court also finds that the claims asserted against the DCA and the DEP are barred by the Eleventh Amendment. The Court denies the Federal Defendants' motion to dismiss.[16]

---

14. Respondent does not provide any citations to the record to support its statement that Plaintiff has not provided the Corps with the noted certifications. Moreover, it is unclear from the record whether Plaintiff's 2009 application is actually incomplete.

15. Respondent has also argued that Plaintiff's request for mandamus relief relating to his 2009 or Plan C application is moot. The Court finds this argument without merit for the same reasons stated in section B(*l*)(b).

16. 28 U.S.C. § 1346 grants this Court concurrent jurisdiction with the United States Court of Federal Claims over civil claims filed against the United States "not exceeding $10,000 in amount" over claims "founded either upon the Constitution, ... any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1346(a)(2). The Federal Defendants acknowledge in their motion that Plaintiff has conditionally waived recovery in excess of $10,000 against the United States so that this Court may retain

### a. Ripeness

All Defendants have moved to dismiss Plaintiff's claims against them, arguing that Plaintiff's claims are not ripe. "The question of ripeness 'goes to whether ... [this Court has] subject matter jurisdiction.'" *Reahard v. Lee County,* 30 F.3d 1412, 1415 (11th Cir.1994) (quoting *Greenbriar Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 (11th Cir.1989)). Article III of the United States Constitution limits the power of this Court to hear "cases and controversies." U.S. Const. Art. III, § 2. In considering whether there is a "case and controversy," this Court considers whether a claim is ripe for adjudication. The purpose of determining whether a claim is ripe for adjudication "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect ... agencies from judicial interference until an administrative decision has been formalized...." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

In order to demonstrate that a regulatory takings claim is ripe for adjudication the property owner "must overcome two hurdles: the final decision hurdle and the just compensation hurdle." *Eide v. Sarasota County,* 908 F.2d 716, 720 (11th Cir.1990). First, the property owner must demonstrate that "the government entity charged with implementing the the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County*

*Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In addition, when proceeding against a state or state agency the property owner must demonstrate that he or she has sought "compensation through the procedures the State has provided for doing so." *Id.* at 194, 105 S.Ct. 3108. The DCA, the DEP, and the City argue that Plaintiff cannot meet both requirements, whereas, the Federal Defendants argue that Plaintiff cannot demonstrate that there has been a final decision. The Court agrees that the claims against the DCA, the DEP, and the City are not ripe, but denies the Federal Defendants' motion to dismiss for ripeness.

First, Defendants argue that the requisite final decision has not yet occurred. In response Plaintiff argues that it has sufficiently alleged that a final decision has occurred and that even if no final decision has been issued, he has sufficiently alleged "extraordinary delay," which is an exception to the general ripeness rule.

The Court agrees that Plaintiff has not alleged and that a final decision has been issued in this case. Plaintiff specifically alleges that the DCA, the DEP, and the City have failed to issue him a permit, *see* (D.E. No. 15 at 15), and there is no allegation that any final decision has been made on the issuance of a permit to Plaintiff. The Court finds Plaintiff's conclusory allegations that the City issued a "final ripeness" decision stating "it was not willing to grant and/or waive the variances" and the City's Board of Adjustment's action was "final" in denying his administrative appeal of this decision are not suffi-

---

jurisdiction over this claim. (D.E. No. 41 at 21); *see also* (D.E. No. 15 at 23). The Federal Defendants also state that to the extent Plaintiffs are seeking compensation in excess of the $10,000, this Court does not have jurisdiction. (D.E. No. 41 at 21). This Court

agrees but notes that as Plaintiff has expressly waived this recovery so that this Court may retain jurisdiction. See (D.E. No. 15 at 23). Thus, this is not an issue, and the Court will not address it further.

cient to show that the City has made a final decision. This is particularly in light of Plaintiff's allegation that the City "has objected to the Plan B joint permit application and/or is requiring a number of variances," which means that the City has not yet denied Plaintiff's application and is instead requiring Plaintiff to obtain certain variances. *See id.* In order for a decision on Plaintiff's claim to be ripe, Plaintiff must have sought and obtained a denial of his variance applications. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1540–41 (11th Cir.1991). Here, where there is no allegation that Plaintiff has ever even sought these variances, the Court cannot find that a final decision has occurred.

■ Plaintiff, however, has also argued that he has sufficiently alleged "extraordinary delay," which obviates the need for a final decision. Here, the Court finds Plaintiff has sufficiently alleged extraordinary delay. "The precept of 'extraordinary delay' is … an exception to the general ripeness rule." *Resource Invest., Inc. v. United States,* 85 Fed.Cl. 447, 493 (2009). An extraordinary delay in the processing of a permit application can result in a temporary regulatory taking. *Aloisi v. United States,* 85 Fed.Cl. 84, 93 (2008).

In *Aloisi,* the Court stated that

In determining if there is a delay sufficient to support a temporary taking, the length of any alleged extraordinary delay must be put into context and examined in relation to the regulatory permitting scheme, the nature of the permitting process, and reasons for the delay. *Wyatt* [*v. United States* ], 271 F.3d … [1090, 1098 [ (Fed.Cir. 2001) ].] Delays are inherent in complex regulatory permitting processes.

*Id.* The nature of the regulatory scheme is especially critical when the permitting process requires detailed technical information necessary to determine the environmental impact of a proposed project. *Id.* When reviewing the length of time alleged to be extraordinary, government agencies dealing with the complex regulatory schemes should be afforded significant deference in determining what additional information is required to satisfy statutorily imposed obligations. *Id.* We must also recognize that delays may be attributable to the permit applicant as well as the government. *Id.* Rarely will there be a takings based on extraordinary delay without a showing of bad faith. *Id.* (citing *Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 799 (Fed.Cir.1993)).

*Id.* In reviewing the Complaint, the Court finds Plaintiff has sufficiently alleged extraordinary delay.

Plaintiff alleges that Defendants acted intentionally in creating "extraordinary delays in processing his applications." (D.E. No. 15 at 24–25). He states that Defendants "have jointly and collectively, through their wrongful actions, including, but not limited to their objections, denials, deactivations, extraordinary delays, stonewalling and perpetual requests for information, intentionally frustrated … [Plaintiff's] administrative and legal remedies, prevented him from rebuilding his fire destroyed home and otherwise deprived him of all economically beneficial or productive use of his property." *Id.* at 16. He also states in more detail the specific actions he alleges Defendants have taken in attempting to "stonewall" his applications. *See id.* at 5–15. Thus, the Court finds Plaintiff has sufficiently alleged that an extraordinary delay has occurred.[17]

17. It is unclear whether Defendants have made a facial or factual subject matter jurisdiction challenge on the basis of ripeness. Federal Defendants are the only defendants to address the "extraordinary delay" issue, and despite the fact that Plaintiff pleaded extraordinary delay in his Amended Complaint, this

■ With regard to the DEP, the DCA, and the City, Plaintiff must also show that he has sought relief under the State procedures in order to show that his claim is ripe. Defendants argue that Plaintiff has not met or alleged that he has met these requirements. Plaintiff responds that "it is not entirely clear whether Florida recognizes a cause of action for damages for regulatory takings" and that Plaintiff cannot seek complete relief in the state court because the Corps and the United States cannot be sued in state court and the taking Plaintiff alleges involves the joint and collective actions of the state and federal agencies together. (D.E. No. 28 at 18). First, the Court finds that Florida clearly recognizes a cause of action for regulatory takings. *Joint Ventures, Inc. v. Dep't of Transp.*, 563 So.2d 622 (Fla. 1990); *see also Reahard*, 30 F.3d at 1417 ("Before April 1990, it was not clear whether Florida's courts recognized an inverse condemnation remedy based on zoning classifications. In *Joint Ventures, Inc. v. Department of Transp.*, 563 So.2d 622 (Fla.1990), which was decided in April 1990 and involved a state-imposed development moratorium, the Florida Supreme Court for the first time explicitly recognized such a cause of action."); *Abusaid v. Hillsborough County Bd. of County Com'rs*, 637 F.Supp.2d 1002, 1016 n. 13 (M.D.Fla.2007) ("The State of Florida provides an adequate procedure for seeking just compensation, namely, a remedy for inverse condemnation."). Next, the Court finds Plaintiff's unsupported argument that this Court should ignore the requirement relating to seeking relief in the state

court because he may only obtain "complete relief" by suing the Federal Defendants in the same action with the DEP, the DCA, and the City is without merit. Thus, the claims against the DEP, the DCA, and the City are not ripe and are dismissed.

**b. Mootness**

■ The Federal Defendants also argue that Plaintiff's claims should be dismissed as moot. Mootness is another part of the "case and controversy" requirement found in Article III. "Plainly, if a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." *Coral Springs Street Systems, Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004). Specifically, Defendants argue that Plaintiff's declaratory judgment and takings claims are moot because Plaintiff has modified and therefore withdrawn his Plan B and Plan C permit applications. Defendants, however, provide no evidence of the alleged modifications to the Plan C permit application. In addition, it is unclear what type of modifications Plaintiff has allegedly made. The Federal Defendants also concede that "Plaintiff has not yet formally amended his 2009 [or Plan C] Application." (D.E. No. 41 at 2). The Federal Defendants further state in their Reply brief that Plaintiff is preparing revised plans and "*[i]f the* revised plans are approved by the Florida Defendants and [the] City *and then* formally submitted to the Corps, they necessarily amend the pending 2009 Application." (D.E. No. 48 at 3) (emphasis add-

issue is addressed for the first time in the Federal Defendants' Reply Brief. *See* (D.E. No. 48 at 7–10). To the extent Federal Defendants are making a factual challenge to Plaintiff's claim of extraordinary delay, the Court finds Defendants' challenge is inappropriate for this Court's consideration as it is made for the first time in Defendants' Reply Brief, and

Plaintiff has not had an opportunity to respond. As stated above, Plaintiff has clearly pleaded enough facts to establish this Court's subject matter jurisdiction based on the issue of extraordinary delay, Defendants may raise this issue again on summary judgment, and the Court shall give it all due consideration.

ed). Thus, the Court finds that Defendants' unsupported argument is without merit as it is unsupported and based on what may occur. As Plaintiff's claims are pleaded, this action is not moot, and Defendants' motion to dismiss with regard to this argument is denied.

### c. Eleventh Amendment Immunity

██ Defendants the DCA and the DEP have also moved to dismiss this action arguing that this Court lacks subject matter jurisdiction because Defendants are entitled to Eleventh Amendment immunity. Plaintiff responds, arguing that Defendants have waived their Eleventh Amendment immunity and that his claim for declaratory judgment is not barred by the Eleventh Amendment. This Court finds these arguments are without merit and that Plaintiff's claims against the DCA and the DEP are barred by the Eleventh Amendment.

"[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Circuit has stated:

A court may find consent in three circumstances. The clearest of the three, known as express consent, usually takes the form of legislative enactment. The second form of consent derives from the states' ratification of the Constitution. This "plan of the convention" consent assumes that, by ratifying the Constitution and joining the republic, each state ceded certain powers to the federal system; implicit in this cession is the understanding that the state necessarily also consented to suit in certain cases. Thus, the Court has held that, by ratifying the Constitution, the states waived their immunity to suits by the United States, *see, e.g., United States v. Texas,*

143 U.S. 621, 641–46, 12 S.Ct. 488, 492–94, 36 L.Ed. 285 (1892); and by sister states, *see, e.g., South Dakota v. North Carolina,* 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904). Finally, the Court has created a third, extremely limited category of consent. This consent is premised on the state's participation in a congressional program which, as a prerequisite for participation, mandates that the state consent to suit.

*Seminole Tribe of Fla. v. State of Fla.,* 11 F.3d 1016, 1021–22 (11th Cir.1994). Florida has not consented to being sued for claims such as those at issue in this case.

██ Plaintiff argues that in this case the state has waived its immunity. This Court disagrees. A waiver of Eleventh Amendment immunity must be unequivocal. *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 305–06, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) ("Eleventh Amendment immunity [occurs] only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.") (internal quotations omitted); *Doe v. Moore,* 410 F.3d 1337, 1349 (11th Cir.2005) (stating that "[a] state's waiver of its sovereign immunity, however, must be 'unequivocally expressed'"). Plaintiff argues that the DEP and the DCA waived their Eleventh Amendment immunity because the DEP entered into an Operation Agreement with the Corps, because the DEP accepted joint applications from Plaintiff to the DEP and the Corps, because the DEP has "participated in, administered and overseen the joint state/federal permitting process concerning all environmental resource permit applications made in Florida for at least the last ten years," because the DCA "intentionally and actively participated in the joint state and federal permitting process as a commenting agency," and because the

"DCA caused ... [the Corp's] denial of at least one of ... [Plaintiff's] alternative joint permit applications." (D.E. No. 29 at 15–16). These actions, however, do not even begin to show the unequivocal waiver required in this context. Thus, the Court finds Plaintiff's argument relating to waiver is without merit.

 The Court also finds Plaintiff's argument that the Eleventh Amendment does not bar his request for declaratory judgment against Defendants the DEP and the DCA is without merit. "Under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), there is a long and well-recognized exception to ... [Eleventh Amendment immunity] for suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dep't of Health and Rehabilitative Servs.*, 225 F.3d 1208 (11th Cir. 2000). Here, however, Plaintiff has sued two state agencies not state officials. "State agencies ... are never subject to unconsented suit, even under the doctrine of *Ex parte Young*. *Ex parte Young* applies only when state officials are sued for prospective relief in their official capacity. It does not permit suit against state agencies or the state itself, even when the relief is prospective." *Eubank v. Leslie*, 210 Fed.Appx. 837, 844 (11th Cir.2006). Thus, the Court grants Defendants' motion to dismiss and finds that the claims against the DEP and the DCA are barred by the Eleventh Amendment.[18]

### 2. Failure to State a Claim

Finally, the Federal Defendants also move to dismiss Plaintiff's claims in Counts Two and Three for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). When reviewing a complaint under Rule 12(b)(6), the court accepts all well-pleaded allegations as true and views the motion in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Fed.R.Civ.P. 8; *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court finds Plaintiff has sufficiently alleged his claims.

 The Federal Defendants argue that Counts Two and Three should be dismissed to the extent that they argue that "the actions of the United States during the permitting process giving rise to the claim were unlawful." (D.E. No. 41 at 25). The Federal Circuit has stated that "a claim premised on a regulatory [or statutory] violation does not state a claim for a taking." *Lion Raisins, Inc. v. U.S.*, 416 F.3d 1356, 1369 (Fed.Cir.2005). There is a distinction between proper takings claims where a plaintiff alleges "that 'property was taken *regardless* of whether the agency acted consistently with its statutory and regulatory mandate' and the bar to such jurisdiction where 'the plaintiff claims it is entitled to prevail *because* the agency acted in violation of statute or regulation.'" *Id.* (quoting *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1366 (Fed.Cir.2001) (emphasis in original)). In his Amended Complaint Plaintiff has generally alleged that the actions taken by the Corps and the United States were "wrongful," *see*

---

**18.** The Court has also found that the claims asserted against the DEP and the DCA should be dismissed because they are not ripe. Thus, dismissal on the basis of the Eleventh Amendment is an alternative basis for dismissal of the claims against the DEP and the DCA.

(D.E. No. 15 at 64, 89), however, despite Defendants' arguments, Plaintiff has not alleged that he should prevail because the Corps or the United States failed to act consistently with a statutory and regulatory mandate. Thus, the Court finds Defendants arguments relating to this issue are without merit.

The Federal Defendants also argue that Plaintiff has failed to state a claim for declaratory judgment because Plaintiff's claim "is nothing but an effort to obtain a finding of liability on his 'regulatory takings' claim'" and "Plaintiff has not articulated a rationale for the Court to 'declare' a finding of liability on his 'regulatory taking' claims." (D.E. No. 41 at 26). The Court, however, finds Plaintiff has stated a claim. Moreover, the Court finds that Plaintiff has stated a rationale for the Court to enter a declaratory judgment. *See* (D.E. No. 15 at ¶¶ 79, 80, 81, 83, 84, 85). Thus, the Court denies the Federal Defendants' motion to dismiss based on Defendants' arguments that Plaintiff has failed to state a claim. Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendants, Department of Community Affairs and Department of Environmental Protection's Motion to Dismiss Amended Complaint (**D.E. No. 22**) is **GRANTED.**

2. Defendant City of Key West's Motion to Dismiss First Amended Complaint (**D.E. No. 18**) is **GRANTED.**

3. Federal Respondent/Defendants' Motion to Dismiss First Amended Verified Petition for Writ of Mandamus and Complaint for Declaratory Judgment and Regulatory Taking (**D.E. No. 41**) is **GRANTED in part and DENIED in part.** The motion is granted in that Plaintiff has not sufficiently alleged this Court's jurisdiction with respect to his 2008 or Plan B application, and Plaintiff's request for mandamus relief relating to this permit application is dismissed. The motion is denied in all other respects.